IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED
JUL 0 3 2008
Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| INSURANCE CORPORATION OF HANNOVER, <br>     Plaintiff, <br><br> VS. <br><br> SKANSKA USA BUILDING, INC., <br>     Defendant, Third-Party Plaintiff, <br><br> VS. <br><br> LIMON MASONRY, INC., NU-WAY ENTERPRISES, INC., WESTERN SURETY COMPANY, AMERICAN ECONOMY INSURANCE COMPANY, GREAT AMERICAN E&S INSURANCE COMPANY, ROBERT R. GARZA, AND MCAFEE INSURANCE AGENCY. <br>     Third-Party Defendants. | Civil Action No. B-05-304 |

## ORDER ON SUMMARY JUDGMENT

I.  PROCEDURAL HISTORY

Skanska USA Building, Inc. ("Skanska") filed a Third-Party Complaint on January 10, 2006 against Third-Party Defendants Limon Masonry, Inc. ("Limon") and Great American E&S Insurance Company ("Great American") seeking, among other claims, a declaration regarding the rights and obligations of Great American to defend and/or indemnify Limon and Skanska under a commercial general liability policy ("CGL policy") that Great American issued to Limon. (Docket No. 6). On February 5, 2007, Great American filed a Motion for Summary Judgment asking this Court to

determine: (i) whether Great American must defend Limon and/or Skanska pursuant to the CGL policy; (ii) whether Great American must indemnify Limon and/or Skanska pursuant to the CGL policy; (iii) whether Limon is entitled to contribution from Great American under the CGL policy; and (iv) whether certificates of insurance issued to Skanska modify the CGL policy. (Docket No. 89). Limon and Skanska responded to the motion on June 29, 2007 (Docket No. 118) and July 2, 2007 (Docket No. 119), respectively, after receiving extensions of time for filing a response from United States Magistrate Judge John William Black (Docket Nos. 93, 94, 116). Great American then filed reply briefs on July 5, 2007. (Docket Nos. 121, 122).

Skanska filed its Amended Third-Party Complaint on March 18, 2008 (Docket No. 156), followed by its First Amended Third-Party Complaint on April 14, 2008 (Docket No. 168).[1] In Texas[2], the duty to defend is determined by the latest amended pleading. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996)). This Court must, therefore, look to Skanska's First Amended Third-Party Complaint (the "First Amended Complaint"), filed on April 14, 2008, to determine whether the duty to defend arises in this case, even though Great American's Motion for Summary Judgment and all of the response and reply briefs were filed with regard to Skanska's original Third-Party Complaint.

II.     SKANSKA'S FIRST AMENDED COMPLAINT

---

[1] Skanska's First Amended Third-Party Complaint combines Skanska's Amended Third-Party Complaint (Docket No. 156) and Third-Party Defendant Isola Bella Condominiums Association, Inc.'s Second Amended Answer, Counterclaims and Cross Claims (Docket No. 144) into one pleading without alteration of either original filing. (*See* Docket No 168).

[2] The parties agree that Texas law governs this diversity action regarding the issues of Great American's duty to defend, duty to indemnify and any contribution obligation to Limon. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 527-28 (5th Cir. 2004).

Skanska's First Amended Complaint alleges that BFW Construction Co., Ltd. ("BFW")[3] and Limon entered into a contract dated March 12, 2003 wherein Limon "agreed to perform certain work, including but not limited to, the masonry, plaster, stucco and exterior insulation and finish system on a project commonly referred to as the Isola Bella Condominiums - Phase I Development, located on South Padre Island, Texas (the "Project"). (First Amended Complaint at ¶ 2.01). Limon "installed a traditional stucco system with related accessories on most of the exterior of the building." (*Id.*)

On January 26, 2005, Skanska notified Limon of complaints regarding "rust stains appearing at the building exteriors, particularly in areas where metal lathe or corner beads were close to the surface."[4] (First Amended Complaint at ¶ 2.06). Limon attempted repairs, but the areas again exhibited rust stains. (*Id.*) Skanska later notified Limon that new areas of rust were appearing at trim and corner conditions and damaging the work of other subcontractors. (*Id.*) An investigation into the cause of the rust stains allegedly showed that Limon failed to use specified products and

---

[3] BFW was the general contractor for the construction of the Isola Bella Condominium Project. (First Amended Complaint at ¶¶ 2.01-02). On December 29, 2003, BFW filed a Certificate of Amendment to its Certificate of Limited Partnership changing its name from BFW Construction Co., Ltd. to Skanska Texas, Ltd. effective December 31, 2003. (*Id.* at ¶ 2.04). On or about March 30, 2004, Skanska Texas, Ltd. merged with Third-Party Plaintiff Skanska. (*Id.* at ¶ 2.05). Skanska is BFW's successor pursuant to the merger. (*Id.*)

[4] Limon and Skanska submitted affidavits in response to Great American's Motion for Summary Judgment averring that the Project consisted of several distinct buildings separate and apart from the 17-story condominium tower. (Limon's Response to the Motion for Summary Judgment, Ex. A); (Skanska's Response to the Motion for Summary Judgment, Ex. 1). According to the Skanska affidavit, "[t]he Project included a residential tower which included residential condominium units, a guardhouse, a maintenance building, an office/meeting room facility, and exterior fencing." (*Id.*) "The stucco, lathe and plaster exterior" was applied to each of those buildings and "[t]he problems that have been encountered with the accessories supplied by Limon on the Project have been observed and encountered on all portions of the Project, including the non-residential portions of the Project." (*Id.*) Limon's affidavit averred that, in addition to those buildings identified in the Skanska affidavit, the Project also included two parking garages and an electrical building. (Limon's Response to the Motion for Summary Judgment, Ex. A). Whether the Court can consider this evidence will be addressed later in this order.

materials for the Project. (*Id.* at ¶ 2.07). Limon allegedly failed to supply and install corner beads, expansion joints and control joints in accordance with its subcontract with BFW. (*Id.*) After Limon did not inform Skanska as to how Limon would correct the problems, Skanska declared Limon in default under the subcontract. (*Id.* at ¶¶ 2.07-2.08). On August 8, 2005, Skanska terminated Limon's right to proceed under the contract. (*Id.* at ¶ 2.08).

The subcontract required Limon to provide insurance coverage and a certificate of liability insurance evidencing that coverage. (First Amended Complaint at ¶ 2.19). Limon, through its insurance agents, provided Skanska with a certificate of liability insurance for a CGL policy issued by Great American. (*Id.*) The certificate clearly identified the Project as the "Isola Bella Condominiums - Phase I Development" and certified that the coverages specified by the certificate pertained to the Project. (*Id.*) Skanska notified Great American of the problems with Limon's work and demanded that Great American investigate the claims and provide coverage under the CGL policy. (*Id.* at ¶ 2.20). Great American informed Skanska that the CGL policy excluded coverage for claims involving the construction of condominiums and that there was no coverage for Skanska's claims under the policy. (*Id.*)

III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party must go beyond the pleadings and provide specific facts showing that there is a genuine issue for trial. *Id.* at 56(e)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322-23.

The court should not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). The nonmoving party's burden is not satisfied simply by creating some metaphysical doubt as to the material facts or by providing only conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Id.* (citations omitted). A court will resolve factual controversies in favor of the nonmoving party "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.*

IV.  EVIDENCE CONSIDERED IN DETERMINING THE DUTY TO DEFEND

The "eight-corners" rule determines whether an insurer has a duty to defend an insured. *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006); *see also Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004). "[A]n insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." *GuideOne*, 197 S.W.3d at 308 (citing *Argonaut S.W. Ins. Co v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973)). "[O]nly two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant." *Id.* (citing *King v. Dallas Fir Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). "Facts outside the pleadings, even those easily ascertained, are ordinarily not material

to the determination and allegations against the insured are liberally construed in favor of coverage." *Id.* (citing *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)).

In *GuideOne*, the Supreme Court of Texas addressed a narrow exception to the "eight corners" rule adopted by other courts in situations where "it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *GuideOne*, 197 S.W.3d at 309 (quoting *Northfield*, 363 F.3d at 531) (emphasis in original). The Supreme Court appeared to approve of the exception, but made no ruling explicitly recognizing the exception as such a holding was not necessary to resolve the issues before the court. *Id.* at 310; *see Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 600-01 (5th Cir. 2006) (finding that the Supreme Court of Texas had cited with approval the exception as set out by the Fifth Circuit in *Northfield*).

V.   GREAT AMERICAN'S DUTIES AS TO LIMON MASONRY AND SKANSKA

   A.   <u>Duty to Defend Standard</u>

Where the allegations of a complaint do not "clearly bring the case within or without the coverage [of an insurance policy], the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Merchants Fast Motor Lines*, 939 S.W.2d at 141. "[I]n a case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor." *Id.* If some allegation in the complaint triggers the duty to defend, the insurer must show the plain

language of a policy exclusion or limitation allows the insurer "to avoid coverage of *all* claims." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (emphasis in original). If coverage exists for any portion of a suit, the insurer must defend the insured in the entire suit. *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.*, 249 F.3d 389, 391 (5th Cir. 2001) (citing *St. Paul Ins. Co. v. Texas Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.–Austin 1999); *Luxury Living, Inc. v. Mid-Continent Casualty Co.*, No. Civ. A. H-02-3166, 2003 WL 22116202, at *9 (S.D. Tex. Sept. 10, 2003).

Insurance policies are interpreted according to the general principles of contract interpretation. *Balandran v. Safeco Ins. Co.*, 972 S.W.2d 738, 740-741 (Tex. 1998). If a policy provision can be given only one reasonable construction, the provision will be enforced as written. *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex. 1993). If the provision is susceptible to more than one reasonable interpretation, the court must resolve the uncertainty by adopting the construction most favorable to the insured. *Id.*

B.  Duty to Defend Limon

The CGL policy requires Great American to pay for property damage caused by Limon. (Great American Motion for Summary Judgment, Ex. D-2 at 1). Great American also has a "duty to defend the insured against any 'suit' seeking those damages." (*Id.*) The First Amended Complaint asserted that Limon was responsible for rust stains on building exteriors that appeared as a result of its work on the Project. (First Amended Complaint at ¶¶ 2.06-2.08). This allegation creates a potential claim for property damage under the CGL policy and Great American makes no assertion to the contrary in its Motion for Summary Judgment. Great American instead contends that coverage for Skanska's claims is excluded by certain endorsements to the policy: (i) the "Exterior

Insulation and Finish System Exclusion;" and (ii) the "Condominium Exclusion." Great American further asserts that if there is no coverage under the CGL policy for any of Skanska's claims against Limon, Great American has no duty to defend Limon.

1. *Exterior Insulation and Finish System Exclusion*

Endorsement No. 4 to the CGL policy excludes coverage for property damage arising from work on an Exterior Insulation and Finish System ("EIFS"):

> This insurance does not apply to:
>
> "Bodily injury," "property damage," "personal injury," or "advertising injury" arising in whole or in part out of the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement of an Exterior Insulation and Finish System (EIFS) by whatever name, or any component or part thereof including application or use of conditioners, primers, accessories, flashing, coating, caulkings or sealants in connection with Exterior Insulation and Finish Systems (EIFS) by whatever name.

(Ex. D-1 at 8). The First Amended Complaint alleges Limon "agreed to perform certain work, including but not limited to, the masonry, plaster, stucco and exterior insulation and finish system" on the Project. (First Amended Complaint at ¶ 2.01). The First Amended Complaint further alleges that Limon installed a traditional stucco system with related accessories on most of the exterior of the building. (*Id.*) The rust stains were caused by Limon's alleged failure to use products and materials specified by the contract with BFW. (*Id.* at ¶ 2.07). Since the damage could be related to the installation of traditional stucco, masonry or plaster, the First Amended Complaint sets out several potential claims unrelated to any work involving EIFS. While the CGL policy may exclude coverage for work on EIFS, based upon the record before the Court the EIFS Exclusion does not prohibit coverage of all of Skanska's claims and would not, therefore, provide a basis for Great

American to avoid its duty to defend.[5] *See St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.*, 249 F.3d 389, 391 (5th Cir. 2001) (citing *St. Paul Ins. Co. v. Texas Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.–Austin 1999); *Luxury Living, Inc. v. Mid-Continent Casualty Co.*, No. Civ. A. H-02-3166, 2003 WL 22116202, *9 (S.D. Tex. Sept. 10, 2003).

    2.    *Condominium Exclusion*

Amendatory Endorsement No. 9 to the CGL policy excludes coverage for certain work performed related to the construction of condominiums:

> It is agreed that this insurance does not apply to any liability, damages, costs or expenses resulting from claims made against you based upon, arising from, attributable to, related to or in any way involving construction operations relative to residential or commercial apartments, condominiums, family dwellings, townhouses or similar type structures or dwellings.

(Ex. D-1 at 13). The terms "condominiums" and "relative to" are not defined in the policy. (*See id.*)

    a.    Potential Claims for Work on Buildings Not Containing Condominiums

The First Amended Complaint alleges that Limon installed a traditional stucco system on the exterior of "the building." (First Amended Complaint at ¶ 2.01). Skanska later notified Limon about rust stains appearing at "the building exteriors." (*Id.* at ¶ 2.06). The scope of Limon's work is described using the terms "the building" and "building exteriors." The term "building exteriors"

---

[5] Great American also asserts that the holding in *Pine Oak Builders, Inc. v. Great American Lloyds Ins. Co.*, No. 14-05-004870-CV, 2006 WL 1892669, at *9 (Tex. App.-Houston [14th Dist.] 2006) supports the conclusion that Skanska's claims fall under the EIFS exclusion. The EIFS exclusion in *Pine Oak Builders* was far more broad than the EIFS exclusion in the CGL policy, excluding coverage for damage for other work performed on a structure unrelated to the installation of EIFS, if EIFS was installed on any part of that structure. *Id.* at *11. The CGL policy exclusion here is limited only to work involving EIFS and the holding in *Pine Oak Builders* is, therefore, inapplicable to the claims presently before the Court.

9

implies that Limon worked on more than one building or exterior. The First Amended Complaint does not identify the buildings involved in the Project or whether all of the buildings contained condominiums. (*See id.*) Since Skanska asserted potential claims against Limon involving damage to multiple buildings associated with the Project, the allegations are unclear as to the type of buildings damaged, and any doubts regarding whether a claim fall within coverage are resolved in favor of the insured, this Court finds that the First Amended Complaint asserts possible claims against Limon for damage to buildings do not contain condominiums. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

Limon and Skanska submitted affidavits in response to Great American's Motion for Summary Judgment averring that the additional buildings associated with the Project do not contain condominiums. (Limon's Response to the Motion for Summary Judgment, Ex. A); (Skanska's Response to the Motion for Summary Judgment, Ex. 2). A court may only consider extrinsic evidence when determining whether an insured had a duty to defend when "it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004). While the Court has held that the First Amended Complaint presents possible claims for damage to buildings not containing condominiums, if the Court were to apply the narrow *Northfield* exception, the same conclusion would be reached.

In *Northfield*, the Fifth Circuit identified three fundamental issues of coverage: (1) whether the person sued has been specifically excluded by name or description from any coverage; (2) whether the property involved in the suit is included or has been expressly excluded from any

10

coverage; and (3) whether the policy exists. *Id.* The coverage issue before the Court is whether the alleged damage to the Project is included or excluded from coverage. The extrinsic evidence submitted by Skanska and Limon as to what type of buildings were included in the Project goes to the fundamental issue of coverage of whether the damage alleged falls within the coverage of the policy. This evidence will not go to the merits of Skanska's claims regarding whether there was actual damage to any or all of those buildings, only whether the First Amended Complaint asserted damage against different types of buildings. Under *Northfield*, this Court may, thus, review Limon's and Skanska's affidavits to the extent they provide evidence on this fundamental issue of coverage. According to the affidavits, there were nine buildings associated with the Project and only the 17-story condominium tower contained condominiums. (Limon's Response to the Motion for Summary Judgment, Ex. A); (Skanska's Response to the Motion for Summary Judgment, Ex. 2). Applying the *Northfield* exception, the Court must conclude that the First Amended Complaint included damage assertions involving buildings that do not contain condominiums. Therefore, whether or not this Court applies the *Northfield* exception, Skanska alleged that Limon damaged multiple buildings, including buildings that *do not contain condominiums*.

      b.  Scope of the Condominium Exclusion

The Court must next determine whether the Condominium Exclusion excludes coverage only for work performed on a building containing condominiums or whether the exclusion extends to all buildings that are part of a condominium construction project, regardless of whether all buildings contain condominiums. This analysis comes down to an interpretation of the undefined terms "relative to" and "condominium" as set out in the exclusion.

11

Where a policy attributes no technical or special meaning to a term, the court applies the term's ordinary and generally accepted meaning. *See GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 311 (Tex. 2006). "Relative to" is defined as "with regard to" or "in connection with." Merriam-Webster's Collegiate Dictionary 984 (2001). "Condominium" is defined as either: (i) "a unit" owned in "a multiunit structure (as an apartment building) or on land owned in common (as a town house complex);" or (ii) "a building containing condominiums." *Id.* at 240.

Great American asserts that there can be no dispute that the other buildings that are part of the Project were built "with regard to" or "in connection with" the 17-story tower containing condominiums. While this interpretation of "relative to" is an acceptable and plausible way of reading the exclusion, it is not the only reasonable interpretation. This Court must adopt a different reasonable construction of the term if such interpretation is more favorable to Limon. *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex. 1993). The term "condominium" can reasonably be construed to include only a building containing condominiums and not other related buildings. The term "relative to," even defined as "in connection with," may be interpreted to include only work performed in connection with the specific building containing condominiums. It is, therefore, reasonable to read the Condominium Exclusion only to prohibit coverage for work performed on buildings containing condominiums.

Skanska's claims for damage to buildings not containing condominiums do not fall into the exclusion. Since the Condominium Exclusion does not prohibit the coverage of all of Skanska's claims, the exclusion does not provide a basis for Great American to avoid its duty to defend.

C. <u>Duty to Indemnify Limon and Limon's Entitlement to Contribution from Great American</u>

The duty to defend and the duty to indemnify are distinct and separate duties. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821-22 (Tex. 1997). The duty to indemnify is not based on the third-party's allegations, but instead on the actual facts that comprise the third-party's claims. *See Am. Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 154 (Tex. App.–Dallas 1990). The duty to indemnify may be determined before liability only when the duty to defend has been negated and there is no possibility the insurer will ever have a duty to indemnify. *Griffin*, 955 S.W.2d at 84. As Great American has a duty to defend Limon, it is premature to decide whether Great American has a duty to indemnify Limon. Similarly, it is also premature to decide whether Limon is entitled to contribution from Great American.

D. <u>Modification of CGL Policy Through Certificates of Insurance</u>

In accordance with Skanska's subcontract with Limon Masonry, McAfee Insurance Agency provided Skanska with certificates of liability insurance naming Skanska as an additional insured with respect to the CGL policy. Great American asserts that these certificates did not amend, extend or alter the coverage of the CGL policy. Skanska conceded that the certificates of insurance do not modify the terms of the CGL policy. Limon made no response to Great American's assertion. To the extent Great American seeks on summary judgment a declaration that the certificates of liability insurance do not amend or alter the coverage of the CGL policy, Great American is unopposed on the issue and the Court will hereby rule to that effect.

E. <u>Great American's Duties as to Skanska</u>

Skanska has pleaded a cause of action against Great American for Great American's failure to defend and indemnify Skanska. Skanska has represented to the Court, however, that it has not sought a defense from Great American nor has it sought indemnity from Great American. Great American, while nominally including these claims in its Motion for Summary Judgment, centered its arguments around the exclusions in the CGL policy. Great American did not move on the ground that Skanska was not its insured (or additional insured); nor did Great American address the propriety of being named in the lawsuit as a party where the liability of its insured had not yet been determined. That being the case, the Court finds that any ruling on any potential duty of Great American to defend or indemnify Skanska has not been properly presented to the Court and is, therefore, not ripe.

VI. CONCLUSION

Great American's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. The certificates of insurance issued by Limon's insurance agents do not modify the CGL policy, and Great American's Motion for Summary Judgment on this issue is **GRANTED**. Great American has a duty to defend Limon against Skanska's claims as currently constituted, and its Motion for Summary Judgment on this issue is **DENIED**. Further, Great American's contentions with regard to its duty to indemnify Limon, duty to defend and/or indemnify Skanska, and whether Limon is entitled to contribution are **DENIED** as premature without prejudice to refiling.

Signed this 3rd day of July, 2008.

_____
Andrew S. Hanen
United States District Judge